PLAINTIFF'S
EXHIBIT

**1A**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

---

**NJERI WILLIAMS**
**South District**
**St George, Barbados, 19156**

      **Plaintiff,**

**vs.**

**AMERICAN AIRLINES, INC.**
**1 Skyview Drive**
**MD8B503, Corporate Secretary**      **Case No.: 1:23-cv-01474**
**Fort Worth, TX 76155**        **JURY TRIAL DEMANDED**

      **Serve on Registered Agent:**

**Corporation Service Company**
**1090 Vermont Ave. NW**
**Washington, DC 20005**

**and**

**JANE DOEd**
**Identified as Passenger 9F**
**ADDRESS UNKNOWN**

      **Defendants.**

---

## AMENDED COMPLAINT

COMES NOW Plaintiff Njeri Williams, by and through undersigned counsel, hereby

files this Complaint as follows.

## JURISDICTION AND VENUE

1.     The Court has original jurisdiction over the matter complained of herein pursuant

to 28 U.S.C. § 1332.

2.     The Court has personal jurisdiction over the Defendant because the Defendant is a

corporation which conducts business within the District of Columbia. The parties are diverse and

the amount in controversy exceeds $75,000. Venue is therefore proper within the jurisdiction of the United States District Court for the District of Columbia.

## PARTIES

1.      Plaintiff, **Njeri Williams**, is a resident of Barbados who resides in South District, St George, Barbados.

2.      Defendant **American Airlines, Inc.** is a for profit corporation that conducts business in the District of Columbia with its headquarters located in Fort Worth, Texas.

## SUMMARY OF THE CASE

3.      This case involves Defendant's negligent failure to keep Plaintiff safe from negligent conduct by its employees that caused Plaintiff to suffer injuries, pain and suffering.

## FACTUAL BACKGROUND

4.      At all times relevant, Defendant American Airlines, Inc. operated as a commercial air carrier engaged in the business of transporting fare-paying passengers on regularly scheduled domestic and international flights in a commercial transport aircraft owned, leased, operated managed, maintained, and/or controlled by Defendant and its agents and/or employees.

5.      On May 30, 2021, Defendant American Airlines, Inc. was the owners and/or operator of a commercial transport aircraft being operated as American Airlines flight AA2123, which originated at the Bridgetown, Barbados Grantley Adams International Airport (BGI) with a stop at the Ronald Reagan Washington National Airport (DCA) and an intended destination at the New York John F. Kennedy International Airport (JFK).

6.      On May 30, 2021, at approximately 8:02 PM in the evening, Plaintiff was an invited guest onboard an American Airlines flight AA2123 from BGI with a intended destination of JFK.

7.      Plaintiff was seated in the first row of the flight on the right side of the plane, facing the front of the plane.

8.      Plaintiff was comfortably seated and had fallen asleep while waiting for the aircraft to take flight.

9.      At some point, the aircraft began to move toward the runway.

10.     As the plane made its way to the runway, the flight crew began to give the safety briefing.

11.     During this time, a passenger in seat 9F ("Passenger 9F") was on FaceTime, on her cell phone, yelling and cursing loudly.

12.     A member of the flight crew asked Passenger 9F to turn off her cell phone. But Passenger 9F began yelling loudly, refusing to get off the phone.

13.     A flight attendant, (herein referred to as "FA1") observed Passenger 9F's behavior.

14.     FA1 then conferred with another flight attendant (herein referred to as "FA2") about what was best to do about Passenger 9F.

15.     FA1 and FA2 decided that they both wanted Passenger 9F removed from the flight.

16.     Based on this decision, FA1 and FA2 then went to the front of the aircraft and called the pilots to have Passenger 9F removed from the flight.

17.     The flight crew decided to return the aircraft to the gate, and "possibly" have Passenger 9F removed from the flight.

18.     FA1 and another crew member disarmed the doors.

19.     FA1 then went to the back of the aircraft and stayed there while another crew member went to the front of the aircraft to explain why Passenger 9F needed to be removed from the flight.

20.     An American Airlines manager boarded the aircraft, approached Passenger 9F and asked her to exit the aircraft and speak with him.

21.     The American Airlines manager advised passenger 9F that she could leave her bags, because "he just wanted to speak with her at that point."

22.     As Passenger 9F walked towards the front of the aisle, she stated that she did not want to leave her bags if she was "getting kicked off the plane."

23.     The American Airlines manager continued to try and speak with Passenger 9F. However, Passenger 9F attempted to pass by the manager.

24.     The manager failed to properly restrain Passenger 9F and prevent her from returning to the aisle of the aircraft.

25.     The manager put his arms up to block her movement, but this was insufficient to properly keep the irate passenger from returning to the aisle of the aircraft.

26.     Passenger 9F moved past the manager and started walking from the front of the aircraft down the aisle to her seat.

27.     At around the same time Passenger 9F was attempting to walk back to grab her bags, another crew member announced that a passenger's wallet had been found and paged the passenger to walk to the front of the aircraft to retrieve the wallet.

28.     The passenger whose wallet had been found ("Wallet Passenger") identified himself to FA1 who was standing in the back of the aircraft.

29.     FA1 then told Wallet Passenger to remain seated and that she would go to the front and retrieve the wallet for him.

30.     FA1 then walked to the front of the aircraft while the crew was still managing Passenger 9F's removal from the flight.

31.     FA1 then became a physical block to Passenger 9F's pathway to retrieve her bags.

32.     An altercation ensued between Passenger 9F and FA1.

33.     As a result of the altercation, FA1 fell on top of Plaintiff.

34.     Plaintiff was suffering from a back injury at the time, and requested that medics be called to the scene.

35.     Plaintiff was transported to the hospital for further treatment.

36.     Passenger 9F was later removed from the aircraft, along with her property.

37.     As a result of the negligent behavior of the American Airlines management and staff, Plaintiff was seriously injured and has been required to pay medical expenses, suffer physical pain, undergo painful medical treatment and physical therapy and suffer other damages and losses.

38.     Defendant American Airlines caused Plaintiff's injuries by failing to manage Passenger 9F in a safe and controlled manner that would prevent the irate passenger from harming other passengers.

39.     First, the American Airlines manager negligently asked Passenger 9F to exit the aircraft without her bags.

40.     The manager negligently attempted to mislead Passenger 9F about whether she was being removed from the aircraft. This failure created a dilemma in which Passenger 9F reacted more irate to retrieve her bags after she realized the manager had mislead her about what was about to occur.

41.     The manager failed to properly require Passenger 9F to retrieve her bags and peacefully remove herself from the aircraft.

42.     Rather, the manager attempted to separate an obviously irate, unreasonable and non-compliant passenger from her belongings during a hostile interaction.

43.     The manager attempted to convince Passenger 9F to leave the aircraft under the auspices that "he just wanted to speak with her."

44.    The manager's negligent mismanagement of the situation created the circumstances which lead to Passenger 9F ascertaining her fate and physically forcing her way back to her belongings.

45.    Had the manager properly told Passenger 9F to grab her belongings and remove herself from the aircraft, the subsequent altercation between her and FA1 would not have happened.

46.    Next the flight crew negligently summonsed Wallet Passenger to report to the front of the aircraft to retrieve his lost wallet while the manager was attempting to remove an obviously irate, unreasonable and non-compliant passenger from the aircraft.

47.    In response to the flight crew's negligent summons, FA1-who was keenly aware of the situation-negligently decided to walk toward the front of the aircraft while other crew members were in the process of managing Passenger 9F's removal.

48.    FA1 knew that retrieving the wallet was not an urgent matter and that Wallet Passenger could have waited until Passenger 9F was removed from the flight and the cabin doors sealed to receive his wallet.

49.    Despite knowing this, FA1 decided to walk to the front of the aircraft while Passenger 9F was not yet securely removed.

50.    FA1 also negligently walked hastily to the front of the aircraft without paying cautious attention to whether the coast was clear.

51.    FA1 was then set on a crash course with Passenger 9F during a hostile and potentially dangerous removal process.

52.     To add on to the manager's negligent mismanagement of Passenger 9F, FA1 further exacerbated the hazardous environment by physically confronting and blocking the pathway of an obviously irate, unreasonable and non-compliant passenger.

53.     Rather than rushing to the front of the aircraft, FA1 should have told Wallet Passenger she would retrieve his wallet after the flight left the gate and she should have remained in the back of the aircraft until Passenger 9F was safely removed from the flight.

54.     FA1's physical confrontation and blockage of Passenger 9F's pathway to her bags resulted in a confrontation in which FA1 fell on top of Plaintiff.

55.     The series of acts and omissions by the airport personnel that resulted in Plaintiff's injuries include the following:

a.  deciding to remove Passenger 9F from the aircraft under the auspices of only wanting to "speak with her;"

b.  deciding to convince Passenger 9F that she was not yet being removed from the aircraft by asking her to leave he bags on the flight;

c.  deciding to page Wallet Passenger to report to the front of the aircraft while removing Passenger 9F;

d.  deciding to rush from the back to the front of the aircraft to retrieve Wallet Passenger's wallet while removing Passenger 9F; and

e.  deciding to confront and block Passenger 9F's pathway near and in front of where Plaintiff and other passengers were seated;

56.     These acts and omissions were unusual or unexpected and external to Plaintiff.

57.     Upon information and belief, Defendant American Airlines has policies and procedures on how to properly remove an irate passenger in a manner that avoids physical injury to passengers and staff.

58.     Upon information and belief, the Defendant's aircraft staff failed to adhere and implement those policies and procedures when addressing Passenger 9F's conduct.

59.     The aircraft crew took unusual measures to remove Passenger 9F by attempting to deceive her about whether she was being removed from the flight.

60.     FA1 and FA2 had decided they both wanted Passenger 9F removed from the flight.

61.     The pilots returned the aircraft to the gate in order to have Passenger 9F removed.

62.     Rather than advise Passenger 9F she was being removed from the flight and command her to grab her bags and leave the aircraft, the aircraft personnel took an unusual approach and told Passenger 9F they *only wanted to talk with her* and that she could leave her bags on the flight.

63.     Moreover, while Passenger 9F was being removed in this unusual manner, the aircraft crew made an unusual decision to page another passenger to the front of the aircraft to retrieve a wallet.

64.     FA1, who personally decided to remove Passenger 9F, then made an unusual decision to walk incautiously to the front of the aircraft without confirming that Passenger 9F was safely removed from the flight.

65.     FA1 also made an unusual decision to place herself into physical contact with Passenger 9F, whom FA1 had observed to be irate, non-compliant and combative.

66.     Defendant's decisions did not comply with applicable safety policies and procedures and thus were not part of normal operations of the aircraft.

67.     As a result of Defendant's conduct, FA2 fell on top of Plaintiff.

68.     Plaintiff was seated, belted, asleep, and unaware of these events as they took place.

69.     Plaintiff did not expect that the flight crew would commence a chain of events that would result in a flight attendant falling on top of her while she was sleeping and waiting for take-off.

70.     Plaintiff should reasonably expect to sleep while awaiting take off without a flight attendant falling on top of her.

71.     As a result of the aircraft crew's actions and omissions, Plaintiff sustained serious injury and suffered other losses and damages.

## COUNT I
## CLAIM FOR DAMAGES UNDER THE MONTREAL CONVENTION
*Strict Liability Damages up to $128,821 SDRs*

72.     Plaintiff incorporates by reference all allegations in paragraphs 1-71 of the Complaint as if fully stated herein.

73.     At the time of Ms. Williams' injury, Defendant American Airlines, Inc. was a carrier providing international flight and/or carriage by aircraft for reward as defined in Article 1 of the Montreal Convention.

74.     At the time of her injury, Ms. Williams was a seated passenger on board the aircraft of an international flight and/or carriage by aircraft for reward as defined in Article 1 of the Montreal Convention.

75.     Accordingly, the Montreal convention applies to this cause of action.

76.     Pursuant to Article 17 of the Montreal Convention, Defendant American Airlines, as the carrier, is liable for damages sustained in case of bodily injury of a passenger upon condition only that the accident which caused the injury took place on board the aircraft or in the course of

any of the operations of embarking or disembarking.

77.     Ms. Williams was on board the American Airlines flight when she suffered her injuries.

78.     Pursuant to Article 21(2) of the Montreal Convention, Defendant is strictly liable to Ms. Williams for all personal injury damages up to 128,821 Special Drawing Rights (SDRs) and liable for amounts exceeding 128,821 SDRs if Defendant cannot prove that it took all necessary measures to prevent or avoid the injuries or damages, or that the injuries or damages were solely due to the negligence or other wrongful act or omission of a third party.

79.     At all times relevant, Defendant operated as a common carrier and was under a duty to operate and control the subject aircraft, on the ground and in the air, with the highest degree of care, and to exercise the highest degree of care to prevent injury of any kind.

80.     Defendant breached its duty to use reasonable care and negligently and carelessly discharged its duties as a common carrier, among these and other ways, as follows: Failing to exercise reasonable care in the safety of its passengers.

81.     As a direct and proximate result of the negligent and careless acts of Defendant, Ms. Schell sustained several serious injuries, and pain and suffering, including but not limited to permanent injuries, emotional distress, loss of enjoyment of life, and other injuries, economic and physical.

**WHEREFORE**, Plaintiff Njeri Williams demands judgment against Defendant American Airlines for compensatory damages, costs and other such relief as this Court deems appropriate.

## COUNT II
## CLAIM FOR DAMAGES UNDER THE MONTREAL CONVENTION
*Negligence Damages in excess of 128,821 SDRs*

82.     Plaintiff incorporates by reference all allegations in paragraphs 1-83 of the Complaint as if fully stated herein.

83.     At the time of Ms. Williams' injury, Defendant American Airlines, Inc. was a carrier providing international flight and/or carriage by aircraft for reward as defined in Article 1 of the Montreal Convention.

84.     At the time of her injury, Ms. Williams was a seated passenger on board the aircraft of an international flight and/or carriage by aircraft for reward as defined in Article 1 of the Montreal Convention.

85.     Accordingly, the Montreal convention applies to this cause of action.

86.     Pursuant to Article 17 of the Montreal Convention, Defendant American Airlines, as the carrier, is liable for damages sustained in case of bodily injury of a passenger upon condition only that the accident which caused the injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

87.     Ms. Williams was on board the American Airlines flight when she suffered her injuries.

88.     Pursuant to Article 21(2) of the Montreal Convention, Defendant is strictly liable to Ms. Williams for all personal injury damages up to 128,821 Special Drawing Rights (SDRs) and liable for amounts exceeding 128,821 SDRs if Defendant cannot prove that it took all necessary measures to prevent or avoid the injuries or damages, or that the injuries or damages were solely due to the negligence or other wrongful act or omission of a third party.

89.     At all times relevant, Defendant operated as a common carrier and was under a duty to operate and control the subject aircraft, on the ground and in the air, with the highest degree of care, and to exercise the highest degree of care to prevent injury of any kind.

90.     Defendant breached its duty to use reasonable care and negligently and carelessly discharged its duties as a common carrier, among these and other ways, as follows:

a.  Failing to exercise reasonable care in the safety of its passengers.

b.  Deciding to remove Passenger 9F from the aircraft under the auspices of only wanting to "speak with her."

c.  Deciding to convince Passenger 9F that she was not being removed from the aircraft by asking her to walk off the flight without her bags.

d.  Deciding to page Wallet Passenger to report to the front of the aircraft while in the process of removing Passenger 9F.

e.  Deciding to walk from the back to the front of the aircraft to retrieve Wallet Passenger's wallet while in the process of removing Passenger 9F.

f.  Deciding to physically confront and block Passenger 9F's pathway near and in front of where Plaintiff and other passengers were seated.

91.     As a direct and proximate result of the negligent and careless acts of Defendant, Ms. Schell sustained several serious injuries, and pain and suffering, including but not limited to permanent injuries, emotional distress, loss of enjoyment of life, and other injuries, economic and physical.

**WHEREFORE**, Plaintiff Njeri Williams demands judgment against Defendant American Airlines for compensatory damages, costs in an amount in excess of 128,821 SDRs and other such relief as this Court deems appropriate.

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

BOND LAW, PLLC

By: __/s/ Johnnie D. Bond, Jr._____
    Johnnie D. Bond, Jr.
    3221 M St NW
    Washington, DC 20007
    Phone: 202-683-6803
    Fax: 202-478-2252
    jbond@bondpllc.com

    *Attorneys for Plaintiff*