UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NJERI WILLIAMS,

    *Plaintiff*,

v.

AMERICAN AIRLINES, INC., *et al.*,

    *Defendants*.

Civil Action No. 23-01474 (AHA)

**Memorandum Opinion and Order**

Plaintiff Njeri Williams alleges that she suffered injuries onboard an American Airlines flight when a disruptive passenger struck a flight attendant, causing the flight attendant to fall on Williams. The parties agree this case is governed by the Montreal Convention. American Airlines moves for summary judgment, arguing the incident in question was not an "accident," as required for liability under the Convention. In the alternative, American contends that damages are capped under the Convention because any injury did not result from its negligence and was solely caused by the disruptive passenger. The Court concludes there are material factual disputes as to both liability and the damages cap, and therefore denies American's motion for summary judgment.

**I.    Background**

In the summary judgment posture, the Court views the evidence in the light most favorable to the nonmoving party—here, Williams—and draws all reasonable inferences in her favor. That evidence shows that in May 2021, Williams boarded an American Airlines flight from D.C. to New York. ECF No. 34-10 ¶ 3; ECF No. 39-1 ¶ 3. She was seated in the first row, on the right side

of the aisle. ECF No. 34-10 ¶¶ 5, 7; ECF No. 39-1 ¶¶ 5, 7. At some point during the boarding process, Williams fell asleep in her seat. ECF No. 34-10 ¶ 12; ECF No. 39-1 ¶ 12.

Meanwhile, during the flight's safety demonstration, Flight Attendant Abigail McMahon noticed a passenger in seat 9F having a "hostile and aggressive" FaceTime call, even after passengers had been instructed to put their phones in airplane mode. ECF No. 34-10 ¶ 15; ECF No. 39-1 ¶ 15. McMahon told Passenger 9F to end the call, but the passenger ignored that instruction and "continued using combative and argumentative language." ECF No. 34-10 ¶ 16; ECF No. 39-1 ¶ 16. When McMahon again asked Passenger 9F to place the phone in airplane mode, the passenger "became aggressive" and started swearing at McMahon. ECF No. 34-10 ¶¶ 17–18; ECF No. 39-1 ¶¶ 17–18. The cabin crew halted the safety demonstration and contacted the captain, who decided to return the aircraft to the gate and have Passenger 9F removed from the flight. ECF No. 34-10 ¶¶ 18–19; ECF No. 39-1 ¶¶ 18–19(a).

Once the plane returned to the gate, an American Airlines manager boarded the plane and went to speak with Passenger 9F at her seat. ECF No. 34-10 ¶ 23; ECF No. 39-1 ¶ 23. The manager asked Passenger 9F to exit the plane and speak with him but informed her that she could leave her bags. ECF No. 39-1 ¶¶ 24(a)–(b). As Passenger 9F walked toward the front of the plane, however, she said that she did not want to leave her bags behind if she was getting kicked off the plane. *Id.* ¶ 24(e). The manager and Passenger 9F then had a conversation at the front of the plane in the area between the flight deck door and the boarding door. *Id.* ¶ 24(i). There, Passenger 9F screamed at McMahon, demanded her name, and threatened her with legal action. *Id.* ¶ 24(j).

While the situation with Passenger 9F unfolded, the cabin crew made an announcement to identify a passenger onboard who had left a wallet in the airport. ECF No. 34-10 ¶ 24; ECF No. 39-1 ¶ 24(k). Another flight attendant, Jane Sy, located the passenger in question and began to

2

walk toward the front of the plane to retrieve the wallet. ECF No. 34-10 ¶ 25; ECF No. 39-1 ¶ 25. As she did so, Passenger 9F was still in the front area of the plane. ECF No. 34-10 ¶ 26; ECF No. 39-1 ¶ 26. Passenger 9F then began to move back down the aisle to try to retrieve her bags. ECF No. 34-10 ¶ 30; ECF No. 39-1 ¶ 31. Passenger 9F struck and then pushed Sy, causing her to fall onto Plaintiff Williams. ECF No. 34-10 ¶ 33; ECF No. 39-1 ¶ 33. Williams woke up in pain to other passengers asking if she was alright. ECF No. 39-1 ¶ 34(a).

Williams asserted claims against American for damages under the Montreal Convention. ECF No. 11 ¶¶ 72–91. American answered, and the parties proceeded to discovery. ECF No. 12. At the parties' request, the Court bifurcated liability discovery and damages discovery. *See* ECF Nos. 7, 8. After liability discovery closed, American moved for summary judgment, arguing that (1) no "accident" occurred under the Montreal Convention, and (2) even if there was an accident, Williams's damages should be capped because American was not negligent and Passenger 9F was the sole cause of the incident. ECF No. 34-1.

**II.    Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute "is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). The reviewing court "must view the evidence in the light most favorable to the nonmoving party . . . , draw all reasonable inferences in her favor, and eschew making credibility determinations or weighing the evidence." *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007).

**III.   Discussion**

The Court concludes that summary judgment is not appropriate here because there are two genuine disputes of material fact under the Montreal Convention that must be resolved by a jury at trial: first, whether an "accident" occurred, and second, whether American was negligent.

**A.  There Is A Genuine Dispute Of Material Fact As To Whether An Accident Occurred**

The Montreal Convention is a multinational treaty that establishes uniform rules to govern claims arising from international air transportation. *Naqvi v. Turkish Airlines, Inc.*, 80 F. Supp. 3d 234, 237 (D.D.C. 2015). Article 17(1) of the Convention imposes liability for "death or bodily injury" if "the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999 ("Montreal Convention"), *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734.

The Supreme Court analyzed Article 17 of a similar treaty, the Warsaw Convention, in *Air France v. Saks*, 470 U.S. 392 (1985).[1] The Court concluded that liability arises under Article 17 "only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger." *Id.* at 405. The Court explained that this definition "should be flexibly applied" and noted that lower courts had "interpreted Article 17 broadly enough to encompass torts committed by terrorists or fellow passengers." *Id.*

American asserts that courts applying the *Saks* standard "'require the "accident" to arise from the risks peculiar to or characteristic of air travel,' or 'require[] that the event in question bear

---

[1] "Because of the similarities between the two treaties, courts have repeatedly relied on Warsaw Convention jurisprudence to interpret parallel provisions of the Montreal Convention." *Erwin-Simpson v. AirAsia Berhad*, 375 F. Supp. 3d 8, 12 (D.D.C. 2019).

4

some relation to the operation of the aircraft.'" ECF No. 34-1 at 11 (alteration in original) (quoting *Lee v. Air Canada*, 228 F. Supp. 3d 302, 307 (S.D.N.Y. 2017)). According to American, Williams cannot establish that the incident here "was derived from a characteristic of air travel or had anything to do with the operation of [the flight]." *Id.* at 12.

As a preliminary matter, some courts have directly rejected this position. *See, e.g.*, *Lee*, 228 F. Supp. 3d at 310 ("This Court is not persuaded that the Montreal Convention, *Saks*, or the case law of the Second Circuit requires that there be a causal connection between the injury-causing event and the operation of the aircraft or behavior of the flight crew in order to establish that an Article 17 'accident' took place and declines to encrust that requirement onto *Saks*."); *Barratt v. Trinidad & Tobago (BWIA Int'l) Airways Corp.*, No. 88-cv-3945, 1990 WL 127590, at *2 (E.D.N.Y. Aug. 28, 1990) (holding that Article 17's definition of an accident "is in no way limited to those injuries resulting from dangers exclusive to aviation"); *see also Lahey v. Singapore Airlines, Ltd.*, 115 F. Supp. 2d 464, 467 (S.D.N.Y. 2000) ("[T]he actions of the crew are not relevant to the determination of whether the assault was an 'accident' because it is clear that nothing in the term 'accident' suggests a requirement of culpable conduct on the part of the airline crew.").

But even accepting American's narrower definition of an "accident" under Article 17, summary judgment would not be appropriate. In American's cited cases, there was no connection at all between the plaintiff's injuries and the actions of the flight crew. *See Stone v. Cont'l Airlines, Inc.*, 905 F. Supp. 823, 827 (D. Haw. 1995) (no Article 17 accident where plaintiff alleged that he was punched by another passenger); *Price v. Brit. Airways*, No. 91-cv-4947, 1992 WL 170679, at *3 (S.D.N.Y. July 7, 1992) (same); *Levy v. Am. Airlines*, No. 90-cv-7005, 1993 WL 205857, at *4

(S.D.N.Y. June 9, 1993) (no Article 17 accident where plaintiff's injuries resulted from his own conduct or acts of federal agents whose custody he was in).

Here, by contrast, Williams was injured when a flight attendant, who was walking down the aisle to retrieve another passenger's wallet, was pushed onto her. The flight crew played a central role in these events. And a jury could reasonably conclude that the characteristics of air travel contributed to Williams's injuries. *See, e.g.*, *Wallace v. Korean Air*, 214 F.3d 293, 299 (2d Cir. 2000) (finding that Article 17 accident occurred where plaintiff was sexually assaulted by another passenger and explaining that the characteristics of air travel, including the confined space in which plaintiff was seated, increased plaintiff's vulnerability to the assault); *Kwon v. Singapore Airlines*, 356 F. Supp. 2d 1041, 1044–45 (N.D. Cal. 2003) (finding that Article 17 accident occurred where another passenger stepped on plaintiff's foot and explaining that "the inability of passengers to move during boarding when the aisle is being blocked in front by a passenger stowing luggage and in back by other passengers trying to get to their seats are hallmarks of air travel"). Accordingly, American is not entitled to summary judgment on the question whether an accident occurred.

### B. There Is A Genuine Dispute Of Material Fact As To Whether American Airlines Was Negligent

Under the Montreal Convention, a carrier's liability for damages may not exceed a certain threshold if the carrier proves that "such damage was not due to the negligence or other wrongful act or omission of the carrier or its servants or agents" or "such damage was solely due to the negligence or other wrongful act or omission of a third party." Montreal Convention, art. 21(2).[2]

---

[2] The Convention caps these damages at 100,000 Special Drawing Rights, "a unit of artificial currency which fluctuates based on the global currency market." *Lee*, 228 F. Supp. 3d at 306 n.5. The parties agree that, at least at the time the motion for summary judgment was filed, the relevant

The defendant has the burden to prove that one of these conditions is present to trigger the limitation on damages. *See, e.g.*, *Furuta v. Hawaiian Airlines Inc.*, No. 19-cv-00617, 2022 WL 3645764, at *11 (D. Haw. Aug. 24, 2022); *Kruger v. United Airlines, Inc.*, 481 F. Supp. 2d 1005, 1008 (N.D. Cal. 2007). Relying on this provision, American argues that even if it is found liable, damages are capped because it was not negligent and because any injury here was solely due to the actions of a third party, Passenger 9F. ECF No. 34-1 at 13–20. However, genuine disputes of material fact exist as to whether American was negligent.

The parties do not identify the relevant source of law in assessing negligence, but other courts evaluating claims under the Montreal Convention have applied the law of the state in which the incident took place. *See, e.g.*, *Mansour v. Brit. Airways PLC*, No. 18-cv-01757, 2020 WL 1847750, at *3 (W.D. Wash. Apr. 13, 2020); *Lee*, 228 F. Supp. 3d at 311–12 & n.10. The relevant events here occurred at Washington National Airport, located in Virginia. "Under Virginia law, the essential elements of negligence are: '(1) the identification of a legal duty of the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff proximately caused by the breach.'" *Naqvi v. Saudi Arabian Airlines, Inc.*, 123 F. Supp. 3d 129, 133 (D.D.C. 2016) (quoting *Talley v. Danek Med., Inc.*, 179 F.3d 154, 157 (4th Cir. 1999)).

Drawing from federal regulations, industry guidelines, and American's internal policies, Williams argues that American breached three standards for dealing with a disruptive passenger. ECF No. 39 at 12. First, during the removal of a disruptive passenger, routine traffic between the cabin and flight deck must be suspended until the disturbance is resolved. Second, the removal

---

inflation-adjusted threshold was 128,821 Special Drawing Rights. ECF No. 34-1 at 2; ECF No. 39 at 21. Williams asserts, and American has not disputed, that this figure is equivalent to $171,469.78. ECF No. 39 at 21.

must be accomplished in a timely manner, without any unnecessary delay. Third, when the disruptive passenger is removed, their carry-on items must be removed as well.

With respect to the first standard, Williams argues, and American does not dispute, that its internal policies require that routine traffic throughout the cabin be suspended where there is suspicious or threatening behavior. ECF No. 42 at 10. American argues that routine traffic did not need to be suspended here because there is no evidence Passenger 9F was exhibiting suspicious or threatening behavior prior to striking Flight Attendant Sy. *Id.* But that argument conflicts with record evidence that the Court must credit at this stage. McMahon herself described Passenger 9F as "having an aggressive conversation" during the safety demonstration, "including a lot of cursing and what seemed vaguely threatening words without context." ECF No. 39-12 at 2. McMahon also stated that after she told Passenger 9F to place the phone in airplane mode, the passenger "started cursing at me and being incredibly hostile towards me." *Id.* Both McMahon and Sy "felt uncomfortable and unsafe" based on the passenger's behavior. *Id.*; *see also* ECF No. 39-7 at 37:9–11 (McMahon testifying that after she directed Passenger 9F to place the phone in airplane mode, the passenger "started to get more aggressive towards me, started swearing at me, cursing at me"). A reasonable jury could easily conclude that Passenger 9F was exhibiting suspicious or threatening behavior well before striking Flight Attendant Sy—and thus that routine traffic in the cabin should have been suspended under American's own procedures. *See also* ECF No. 39-12 at 4 (McMahon stating in her report that "management instructed us to resolve a significantly less pressing issue during a safety critical moment" and that Passenger 9F's assault on Sy "occurred because of these actions by management and the responding law enforcement officers").[3]

---

[3] American also contends that Williams fails to distinguish between "routine" traffic in the cabin and traffic that was necessary for airline personnel to respond to the incident with Passenger 9F.

As for Williams's second theory, American maintains that whether a disruptive passenger is timely removed is incident-specific and that, here, Passenger 9F was removed from the plane in a timely manner. ECF No. 42 at 12. Again, however, there is record evidence to support the opposite conclusion. The American manager did not immediately escort Passenger 9F off the plane but instead continued to speak her in the area between the flight deck door and the boarding door, while the passenger shouted at Flight Attendant McMahon and threatened legal action. ECF No. 39-7 at 39:19–40:9. McMahon wrote in her report that "[t]he responding officers and management did not remove the passenger in a timely manner, and allowed her to pause in the galley and remain onboard the aircraft for longer than she should have." ECF No. 39-12 at 4. Williams's expert likewise opined that the removal was untimely. ECF No. 34-8 at 6 ("The passenger seated in 9F was not removed in a timely and effective manner and her disruptive and noncompliant behavior was allowed to escalate and another passenger was injured."); *see also* ECF No. 39-9 at 124:10–11 (Williams's expert testifying that the American manager "didn't remove [Passenger 9F] in a timely manner, allowing her behavior to escalate"). On this record, viewing the evidence in the light most favorable to Williams, a jury could reasonably conclude that American was negligent in failing to remove Passenger 9F in a timely manner, thereby causing Williams's injuries.

Williams's third theory, that a disruptive passenger must be removed with their carry-on luggage, is less clear. American argues that there is no such requirement, pointing to testimony from Williams's own expert that it would be permissible to remove a disruptive passenger without their baggage and then "immediately" remove those items once the passenger is off the plane. ECF No. 42 at 11. Even still, there may be a genuine dispute of material fact as to whether, in this case,

---

ECF No. 42 at 11. But there is no dispute that Flight Attendant Sy was walking down the aisle to address the wallet situation; in other words, she was not responding to the incident with Passenger 9F.

the airline removed Passenger 9F and then "immediately" removed her baggage. In any event, Williams's first and second alleged violations are sufficient to conclude that material disputes preclude summary judgment in this case.

For similar reasons, American's argument that any damages here were "solely caused by the negligence, omission or other wrongful act of a third-party"—namely, Passenger 9F—is not an appropriate ground for summary judgment. ECF No. 34-1 at 19. There is no dispute that Passenger 9F was *a* cause of the incident in question. But the Montreal Convention's damages cap applies only if the plaintiff's damages were *solely* due to the negligence or other wrongful acts of a third party. Montreal Convention, art. 21(2)(b). Here, a jury could reasonably conclude that the airline's actions, including failing to keep the cabin clear of traffic and failing to timely remove Passenger 9F, played some role in causing Williams's injuries. *Cf. Buckwalter v. U.S. Airways, Inc.*, No. 12-cv-2586, 2014 WL 116264, at *4 (E.D. Pa. Jan. 13, 2014) (finding genuine issue as to whether flight crew's actions caused plaintiffs' injuries and noting disputes as to "whether the flight crew should have taken certain actions"). American therefore has not satisfied its burden under Article 21(2) to disprove negligence.

## IV.    Conclusion

For the foregoing reasons, American's motion for summary judgment, ECF No. 34, is denied.

_____
AMIR H. ALI
United States District Judge

Date:   March 18, 2025